**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ROGER C. GATES,<br><br>*Plaintiff*,<br><br>v.<br><br>DEMATIC CORPORATION and COUNTY OF PASSAIC,<br><br>*Defendants*. | Civil No.: 20-cv-08475 (KSH) (CLW)<br><br><br>**OPINION** |

**Katharine S. Hayden, U.S.D.J.**

I.  **Introduction**

In this declaratory judgment action, the Court is asked to determine the enforceability of an ERISA lien asserted by defendant Dematic Corporation ("Dematic") in connection with a jury award of $2,645.00.00 to plaintiff Roger Gates ("Gates") in his state court personal injury lawsuit against defendant County of Passaic (the "County"). After the verdict, Gates sought to amend the judgment to add $756,180.80—the amount of the lien asserted by Blue Cross Blue Shield of Michigan ("BCBSM"), Dematic's healthcare plan claims administrator. In signing the judgment to reflect the jury award (less certain medical expenses), the trial judge added:

> [T]he right to assert the claim against the County [] shall not be foreclosed by the entry of this judgment. At the point that a claim is asserted against [Gates], in the appropriate forum, to enforce the lien, the County may be joined as a party, and the right to payment of the lien may be fully litigated by all necessary parties.

(D.E. 1, Compl. Ex. C.) The trial judge then denied Gates's post-judgment motion to file an amended complaint, reasoning as follows:

> This court recognizes that the issue of the ERISA lien must be adjudicated. However, this case is not the proper forum to adjudicate that claim. The court agrees that the cause of action to enforce the lien did not accrue until the final

1

>judgment was entered. [Gates] can now litigate that issue in whatever forum [he] deems appropriate.

(*Id.* at Ex. E.)

This declaratory judgment lawsuit followed, which the Court construes as Gates's response to the trial court's directive—*i.e.*, he seeks a declaration as to the enforceability of BCBSM's lien. The County has been added as a party, consistent with the expectation by Gates and in the trial court that the County will be responsible for payment of the lien.[1] Presently before the Court is Dematic's motion for summary judgment (D.E. 54) arguing that the lien is enforceable as a matter of law, which the County opposes on grounds that there exists a genuine dispute as to the lien's validity. The motion is fully briefed, and the Court decides it without oral argument pursuant to L. Civ. R. 78.1.

## II. Background

On April 14, 2016, Gates was in a motorcycle accident in West Milford, Passaic County, New Jersey.[2] (D.E. 54-1, Dematic Stmt. ¶ 1; D.E. 55-1, County Stmt. ¶ 4.) At the time of the accident, Gates was employed by Dematic and a participant in the Dematic Corporation Salaried Employees Health and Welfare Plan (the "Plan"), an employee welfare benefit plan governed by the Employee Retirement Security Act of 1974, 29 U.S.C. § 1001, *et. seq.* ("ERISA"). (Dematic Stmt. ¶ 2.) Gates sustained injuries that required medical attention, and the Plan paid

---

[1] *See* Compl. ¶ 14 ("[Gates] seek[s] a declaration of rights of the respective parties, himself as employee and Dematic, the Plan holder to determine whether the subject lien is truly self-funded and therefore, is protected by the provisions of ERISA and *is due reimbursement from the County[.]*") (emphasis added).

[2] The County's statement of undisputed facts indicates that the accident occurred after Gates "swerved to avoid potholes causing him to lose control of his motorcycle, enter the opposite lane of travel, and crash into a minivan." (County Stmt. ¶ 4.) In response, Dematic admits only that Gates "was involved in personal injury accident." (D.E. 56, Dematic Resp. ¶ 4.) The record provides no additional facts describing the accident.

2

$756,180.80 in accident-related medical benefits through its administrator, BCBSM. (*Id.* ¶ 3; County Stmt. ¶ 5.)

Gates sent the County a timely notice of tort claim and filed a negligence suit in Passaic County Superior Court on September 1, 2017, alleging improper road maintenance and repair. (Compl. ¶¶ 2-3; *see Gates v. County of Passaic*, PAS-L-2925-17.) During discovery, BCBSM sent Gates a letter through counsel indicating that BCBSM was "seeking reimbursement for medical expenses . . . paid out to date [in] the sum of $756,180.80" pursuant to the Plan's "right to reimbursement and subrogation" provision, which provides in pertinent part as follows:

> If the Plan pays benefits and another party (other than you [(Gates)] or the Plan) is or may be liable for the expenses, the Plan has a right of reimbursement which entitles it to recover from you or another party 100% of the amount of benefits paid by the Plan to you or on your behalf.
>
> The Plan's 100% reimbursement right applies:

- Not only to any recovery you receive or are entitled to receive from the other party but also to any recovery you receive or are entitled to receive from the other party's insurer or a plan under which the other party has coverage.

- To any recovery from your own insurance policy, including, but not limited to, coverage under any insured or underinsured policy provisions.

- To any recovery even if the other party is not found to be legally at fault for causing you to become entitled to Plan benefits.

- To any recovery even if the damages recovered or recoverable from the other party, its insurer or plan or your policy are not for the same charges or types of losses and damages as those for which benefits were paid by the Plan.

- To any recovery, regardless whether the recovery fully compensates you for your injuries and regardless whether you are made whole by the recovery.

- To the entire amount of the recovery to the extent of the expenses payable by the Plan. The Plan's right to reimbursement from the recovery is in the first priority and is not offset or reduced in any way by the Participant's attorneys fees or costs incurred in obtaining the recovery. The Plan disavows any obligation to pay all or any portion of your attorneys fees or costs in obtaining the recovery. The common

> fund doctrine and other similar common law doctrines do not reduce or affect the Plan's right to reimbursement.

(*Id.* ¶ 8, Ex. B; *see* D.E. 54-3, Plan Doc. at DEMATIC 39.)  In response, Gates took the position that BCBSM's lien is unenforceable under New Jersey law because the Plan is not fully self-funded.  (D.E. 55-7, Hunt Decl. Ex. K at BCBSM 120-21.)

The matter proceeded to trial and, on January 31, 2020, a jury returned a verdict in Gates's favor in the amount of $2,645,000.[3]  (Compl. ¶ 5, Ex. A.)  Gates petitioned the trial court to add BCBSM's lien to the judgment against the County, which was denied on March 17, 2020 on grounds that there was "insufficient evidence before the court to determine the validity of the lien."  (*Id.* ¶ 9, Ex. C.)  The trial court added the following:

> [T]he right to assert the claim against the County [] shall not be foreclosed by the entry of this judgment. At the point that a claim is asserted against [Gates], in the appropriate forum, to enforce the lien, the County may be joined as a party, and the right to payment of the lien may be fully litigated by all necessary parties.

(*Id.* at Ex. C.)  After Gates unsuccessfully moved for reconsideration of that ruling, he sought leave to file a post-judgment amended complaint "naming Dematic [] as a defendant [and] seeking a declaration of rights under the [Plan]."  (*Id.* ¶¶ 10, 12, Ex. D.)  The trial court denied that request, reasoning as follows:

> This court recognizes that the issue of the ERISA lien must be adjudicated. However, this case is not the proper forum to adjudicate that claim.  The court agrees that the cause of action to enforce the lien did not accrue until the final judgment was entered.  [Gates] can now litigate that issue in whatever forum [he] deems appropriate.

(*Id.* ¶ 13, Ex. E.)

The instant lawsuit followed.  On June 8, 2020, Gates filed a declaratory judgment complaint against Dematic and the County in Passaic County Superior Court seeking "to

---

[3] The award was later reduced to $2,366,000 to reflect a $279,000 reduction in the jury's award for unpaid past medical expenses.  (*See* Compl. Exs. A, C.)

4

determine whether the subject Plan is within its rights to recover its purported lien"; specifically, whether the Plan "is due reimbursement from the County[.]" (D.E. 1, Rem. Not. ¶ 1; Compl. ¶¶ 14, 18.) Dematic removed the matter to this Court on July 8, 2020 pursuant to 28 U.S.C. §§ 1331 and 1441, and answered the complaint on July 29. (Rem Not. ¶ 10; D.E. 6.) Although the County initially failed to appear, it filed its answer on February 12, 2021. (D.E. 38.)

Dematic has now moved for summary judgment seeking a declaratory judgment as to the enforceability of BCBSM's lien, which the County has opposed.[4] The motion as framed by the parties rises or falls on whether the Plan is self-funded or insured for ERISA preemption purposes.[5] If the Plan is self-funded, applicable state insurance regulations—which, as explained *infra*, render BCBSM's lien unenforceable—are preempted by ERISA. If, on the other hand, the Plan is insured, New Jersey law is saved from ERISA preemption, and BCBSM's lien is unenforceable.

In its moving brief, Dematic argues that the undisputed evidence in the record demonstrates that benefits under the Plan are provided on a self-funded basis and not through BCBSM, its administrator. (D.E. 54, Mov. Br. at 10-15.) The County opposes on grounds that the Plan's participation in an inter-arrangement program known as the "BlueCard Program" casts doubt on whether any Blue Cross Blue Shield ("BCBS") entities *other than* BCBSM insure the Plan. (D.E. 55, Opp. Br. at 10-13.) In reply, Dematic urges the Court to find that the Plan's

---

[4] Gates has not taken a position on the motion.

[5] A plan is self-funded if "it does not purchase an insurance policy form any insurance company in order to satisfy its obligations to its participants." *FMC Corp. v. Holliday*, 498 U.S. 52, 54 (1990).

5

participation in the BlueCard Program in no way impacts its self-funded status.[6] (D.E. 57, Reply Br. at 6-8.)

### III.  Standard of Review

The Court may grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). On a summary judgment motion, the movant must first show that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). This burden can be satisfied either by "produc[ing] evidence showing the absence of a genuine issue of material fact" or by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

If the moving party meets its burden, it is the nonmoving party's burden to "make a showing sufficient to establish the existence of [every] element essential to that party's case." *Id.* at 322. The nonmovant "may not rest upon mere allegations, but rather must 'identify those facts of record which would contradict the facts identified by the movant.'" *Corliss v. Varner*, 247 F. App'x 353, 354 (3d Cir. 2007) (quoting *Port Auth. of N.Y. and N.J. v. Affiliated FM Ins. Co.*, 311 F.3d 226, 233 (3d Cir. 2002)).

---

[6] The Plan purchased stop-loss insurance from BCBSM to cover benefit payments exceeding $225,000 to an individual participant. (*See* D.E. 54-5, Stop Loss Policy at DEMATIC 56.) Although the County cites a case that references stop-loss insurance, it has not directly argued that the Plan's purchase of stop-loss insurance impacts its self-funded status. Had the County raised such an argument, it would have failed under well-settled Third Circuit jurisprudence. *See Bill Gray Enters. v. Gourley*, 248 F.3d 206, 214 (3d Cir. 2001) ("[T]he purchase of stop-loss insurance does not make a self-funded employee benefit plan an insurance carrier under ERISA's 'savings clause.'"); *accord Hua v. Bd. of Trustees*, 2021 WL 2190906, at *4 (D.N.J. May 28, 2021) (Shipp, J.) (plan's purchase of $125,000 in stop-loss insurance did not alter its self-funded status).

IV. Discussion

    a. ERISA Preemption

The County contends that Dematic (on behalf of BCBSM) is precluded from asserting a lien pursuant to N.J.A.C. 11:4-42.10, which provides that "[n]o policy or certificate providing group health insurance shall limit or exclude health benefits as the result of the covered person's sustaining a loss attributable to the actions of a third party." N.J.A.C. 11:4-42.10(a). (Opp. Br. at 13.) In response, Dematic does not dispute that N.J.A.C. 11:4-42.10(a) is subject to ERISA's "savings clause," but instead argues that ERISA's "deemer clause" provides an exception for self-funded plans.[7] (Reply Br. at 12.)

ERISA contains three provisions that speak expressly to the question of state law preemption: (i) the preemption clause; (ii) the savings clause; and (iii) the deemer clause. *See FMC Corp.*, 498 U.S. at 57-58. The preemption clause provides that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). The savings clause "saves" such state laws from preemption—except as provided in the deemer clause—if they "regulate[] insurance, banking, or securities." 29 U.S.C. § 1144(b)(2)(A). And under the deemer clause, "a state law that 'purport[s] to regulate insurance' cannot deem an employee benefit plan to be an insurance company." *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 45 (1987); *see* 29 U.S.C. § 1144(b)(2)(B). Accordingly, the deemer clause exempts "self-funded ERISA plans from state laws that 'regulat[e] insurance.'"

---

[7] In its answer (D.E. 38), the County asserted an affirmative defense under New Jersey's collateral source rule, which provides that "if a plaintiff receives or is entitled to receive benefits for the injuries allegedly incurred from any other source other than a joint tortfeasor, the benefits . . . shall be disclosed to the court and the amount thereof which duplicates any benefit contained in the award shall be deducted from any award recovered by the plaintiff." N.J.S.A. 2A:15-97. However, the County does not cite the collateral source rule in opposition to the instant motion and instead relies solely on N.J.A.C. 11:4-42.10.

*FMC Corp.*, 498 U.S. at 61.  In other words, only if a plan is insured may a state "regulate it indirectly through regulation of its insurer and its insurer's insurance contracts; if the plan is uninsured, the [s]tate may not regulate it." *Id.* at 64.

The instant motion therefore hinges on the Plan's self-funded status, and a close look at Plan documents is in order.

### i. Plan Documents

The Plan has a Plan Document and Summary Plan Description (the "Plan Document") which describes the Plan and its terms.  (Dematic Stmt. ¶ 8.)  In its introductory section, the Plan Document provides in pertinent part as follows:

> Dematic [] ("Plan Sponsor") established the [Plan] ("Plan") to *provide certain health benefits to eligible participants . . . on a self-funded basis*.  This document coupled with the summaries and information provided by [BCBSM] (the claim administrator for the medical/prescription benefits) . . . sets forth the terms of the Plan[.]
>
> . . .
>
> Benefits under the Plan are *provided on a self-funded basis* which means that benefits will be paid by Plan Sponsor from its general assets rather than through a separate trust fund or an insurance company.  As mentioned above, *[BCBSM] is the claim administrator for medical/prescription drug benefits[.] . . . However, [BCBSM] . . . [is] not the insurer[] of the Plan* and any and all references in this [document] to [BCBSM] . . . should be interpreted accordingly.

(Plan Doc. at DEMATIC 2 (emphases added).)  The Plan Document also includes a "self-funded health benefit" section, which states as follows:

> The primary purpose of this document is to describe the *self-funded group medical/prescription drug coverage* for the employee and his or her eligible dependents administered by [BCBSM][.] . . . The claim administrator will provide employees with summaries and information describing the benefits under the option in which an employee is enrolled.

8

(*Id.* at DEMATIC 6 (emphasis added).)  Accordingly, the Plan Document expressly provides that the Plan is self-funded, and further clarifies that BCBSM's function is as the claims administrator—not the insurer.

BCBSM executed an Administrative Services Contract ("ASC") with Dematic which outlines its administrative responsibilities under the Plan.  (*See* D.E. 54-4, ASC.)  The ASC confirms what is set forth in the Plan Document—*i.e.*, that BCBSM serves as the "claims administrator," and that Dematic is therefore "liable for all risks, financial obligations, Amounts Billed, fees, and interest set forth in this [ASC]."  (*Id.* at DEMATIC 192, 193, 199.)

Relevant to the instant motion is the BlueCard Program, which is defined in the ASC as "the national program established by [Blue Cross Blue Shield Association ("BCBSA")] under which Enrollee Claims are processed by BCBS Plans when Enrollees receive health care services outside of the geographic area that BCBSM serves."  (ASC at DEMATIC 192.)  The ASC clarifies how such out-of-state claims are paid and processed:

> Claims received from an out-of-state BCBS Plan for a health care service provided to an Enrollee out-of-state are paid according to that BCBS Plan's health provider contracts and processed according to BlueCard Program standard operating procedures. . . . Out-of-state Claims are reported and billed to [Dematic] as they are received by BCBSM from the out-of-state BCBS Plan.

(*Id.* at DEMATIC 192-93.)  Attached to the ASC as Schedule B are the "BlueCard Disclosures," which describe the BlueCard Program's inter-plan arrangements.  Notably, the BlueCard Disclosures provide that the "Host Blue"—*i.e.*, the out-of-state BCBS entity—is responsible for contracting and handling all interactions with its participating healthcare providers, but clarify that "BCBSM remains responsible for fulling its contractual obligations" to Plan participants.  (*See* D.E. 55-5, Hunt Decl. Ex. G at BCBSM 76.)

9

### ii. The BlueCard Program's Impact on the Plan

The County raises certain arguments as to why the BlueCard Program impacts the Plan's self-funded status which, as explained *supra*, is expressly set forth in the Plan Document. (*See* Plan Doc. at DEMATIC 2, 6.) First, it argues that although the Plan Document indicates that *BCBSM* did not insure the Plan, it does not address that *other BCBS entities* may have done so vis-à-vis the BlueCard Program. (Opp. Br. at 10.) The County relies on a case from the Northern District of Alabama which does not address ERISA preemption (let alone analyze the self-funded status of an ERISA plan), but includes the following description of the BlueCard Program:

> Through the BlueCard program, the Plans have agreed that when a contracted provider treats a patient covered by a Home Plan, *i.e.*, a Plan outside the service area in which the provider is located, the Home Plan will reimburse the provider at a rate which equals (at a minimum) the levels received for providers under the provider's contract with its Host Plan, *i.e.*, the local Plan. . . . Under BlueCard Rules, an access fee may be charged in connection with processing BlueCard claims, but that fee can be, and is frequently, negotiated or waived. . . .
>
> BlueCard is not a "product" which is sold on its own. . . . A customer cannot buy access to the BlueCard network without buying a health product. . . . Further, participation in the BlueCard program is a requirement of the License Agreement between the Association and each individual Plan. . . . However, under the Association Rules, a Plan could create a provider network that is not made available to BlueCard-eligible Members or Subscribers.

*In re Blue Cross Blue Shield Antitrust Litig.*, 308 F. Supp. 3d 1241, 1255 (N.D. Ala. 2018) (internal citations and quotations omitted). According to the County, because Dematic may be "attaching itself, by means of the BlueCard Program, to New Jersey Plans that are otherwise subject to state regulation prohibiting subrogation," summary judgment on this record is inappropriate. (Opp. Br. at 16.)

Putting aside the fact that the record is bereft of any evidence indicating that other BCBS entities insured the Plan,[8] neither the ASC nor its attached BlueCard Disclosures supports the County's contention that the BlueCard Program somehow impacts the Plan's funding status. The documents do not explain how, if at all, the BlueCard Program affects funding; if anything, they make clear that Dematic (as the Plan sponsor) and BCBSM (as the claims administrator) ultimately remain responsible for fulfilling their respective obligations to Plan participants. (*See, e.g.*, ASC at DEMATIC 192-93 ("Claims received from an out-of-state BCBS Plan for a health care service provided to an Enrollee out-of-state are paid according to that BCBS Plan's health provider," but "are reported and billed to [Dematic] as they are received by BCBSM from the out-of-state BCBS Plan").) On this record, the County's theory is mere speculation and therefore insufficient to defeat Dematic's showing that the Plan is self-funded.

The County next argues that the BlueCard Program's "'coverage' is not separate from the health benefits of the [] Plan in a manner that would permit it to maintain its alleged self-funded status." (Opp. Br. at 14.) It relies on two cases holding that where other benefits (such as vision or life insurance) purchased by an insurance policy are separate and distinct from self-funded medical benefits, a plan does not lose its self-funded status. *See White Consolidated Industries, Inc. v. Pei Lin*, 372 N.J. Super. 480, 488 (App. Div. 2004) ("[W]e hold that where . . . the medical benefits in question are provided under an employer's fully self-funded employee health care plan, and other benefits purchased by an insurance policy are completely separate from those health benefits, then the plan is not deemed to be insurance for purposes of ERISA's insurance savings clause."); *accord United Food & Commercial Workers & Employers Ariz.*

---

[8] While it appears that Horizon BCBS of New Jersey acted as the "host plan" for some of Gates's medical expenses billed to BCBSM (*see* D.E. 55-7, Hunt Decl. Ex. L at BCBSM 182), there is nothing in the record to suggest that Horizon BCBS insured the Plan.

*Health & Welfare Trust v. Pacyga*, 801 F.2d 1157, 1162 (9th Cir. 1986). The Court agrees with Dematic that reliance on these cases is "perplexing" not only because they appear to favor Dematic's position, but also because the County has not even attempted to explain what "other insured benefits" the BlueCard Program allegedly offers, let alone how those benefits are intertwined with the Plan's medical benefits such that it can no longer be considered self-funded.

In short, the County offers speculative theories as to the BlueCard Program's impact on the Plan and, without pointing to any concrete evidence in the record, argues that the Court should infer that a genuine dispute exists as to the Plan's self-funded status. However, "an inference based upon [] speculation or conjecture does not create a material factual dispute sufficient to defeat entry of summary judgment." *Robertson v. Allied Signal, Inc.*, 914 F.2d 360, 382 n. 12 (3d Cir. 1990). Instead, this record provides convincing evidence that the Plan is self-funded and, consequently, that ERISA preempts N.J.A.C. 11:4-42.10. Accordingly, the Plan's reimbursement/subrogation provision is enforceable according to its terms. *See Hua*, 2021 WL 2190906, at *5 (granting summary judgment in declaratory judgment action and finding that asserted lien for reimbursement of medical benefits was enforceable on grounds that self-funded plan was protected by deemer clause).

The County argues that the Court should not even reach the issue of lien enforceability because Gates has failed to exhaust his administrative remedies. (*See* Plan Doc. at DEMATIC 34 ("No legal action may be brought to recover benefits under the Plan until the participant has exhausted the claim review procedure.").) The only predicate for this position appears to be Dematic's statement in its notice of removal that this lawsuit "is actually a claim for benefits." (*See* Rem. Not. ¶ 19.) The Court disagrees that it is. Nothing in the declaratory judgment complaint suggests that Gates seeks benefits under the Plan. To the contrary, the crux of this

12

lawsuit is the fact that Gates *has already received benefits*, and he is clear that he seeks a declaration that the Plan "is due reimbursement *from the County*[.]" (Compl. ¶ 14 (emphasis added).) The County's position that Gates "is seeking what would be a denial of benefits under an ERISA plan" (Opp. Br. at 5) is therefore incorrect. The narrow issue before this Court is whether the lien is enforceable, and that is what is decided in this opinion.

Along with a declaration of enforceability, Dematic asks the Court to issue an order "finding that the Plan is entitled to reimbursement in the amount of $756,180.80"—the full amount BCBSM paid out for Gates's accident-related medical benefits—pursuant to the Plan's reimbursement/subrogation provision. (Mov. Br. at 16.) The County does not dispute that the Plan authorizes 100% reimbursement, and the Court sees no reason to stray from the amount sought.

**V.     Conclusion**

For the foregoing reasons, the Court grants Dematic's motion for summary judgment (D.E. 54). An appropriate order will issue.

Date: September 30, 2022

/s/ Katharine S. Hayden
Katharine S. Hayden, U.S.D.J.